## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

_____

RANDALL WILLIAMS,

        Plaintiff,

    v.                                No.

TROY LAWRENCE, JR., in his personal
capacity, JOSEPH CARBONI, in his
personal capacity, STEVEN NEVELS in
his personal capacity, JAMES THOMAS JR.,
in his personal capacity, CITY OF
BATON ROUGE, and PARISH OF
EAST BATON ROUGE.

        Defendants.

_____

### COMPLAINT WITH JURY DEMAND

**NOW INTO COURT,** through undersigned counsels, comes the Plaintiff, Randall Williams, who is a person of the full age of majority and domiciled in East Baton Rouge Parish, State of Louisiana, who respectfully represent the following:

**1.**

### PARTIES

Plaintiff RANDALL WILLIAMS is a citizen of the United States and a resident of Baton Rouge, Louisiana.

**2.**

Made Defendants herein are:

Current and former Baton Rouge Police Department officers TROY LAWRENCE, JR. (P10805), JOSEPH CARBONI (P10677), STEVEN NEVELS (P10494), and JAMES THOMAS, JR., (P10385) who are residents of Louisiana and were employed by the Baton Rouge Police Department at the time of the events giving rise to this complaint.

**3.**

and PARISH OF EAST BATON ROUGE as officers with the Baton Rouge Police Department.

**4.**

Defendant CITY OF BATON ROUGE is a political subdivision of the State of Louisiana. The city's governing authority is consolidated with the government of EAST BATON ROUGE PARISH. Defendant PARISH OF EAST BATON ROUGE is a political subdivision of the State of Louisiana. The Parish's governing authority is consolidated with the government of the CITY OF BATON ROUGE..

## JURISDICTION AND VENUE

**5.**

This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of state law of Plaintiff's rights as secured by the United States Constitution, as well as the deprivation of rights under Louisiana law.

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. Venue is proper under 28 U.S.C. § 1391(b), because the defendants reside in this judicial district and the events giving rise to the claims asserted herein occurred in this judicial district.

## PLAINTIFF'S FACTUAL ALLEGATIONS

**6.**

On April 11, 2023, at approximately 11:10PM, Troy Lawrence, Jr., an officer with the Baton Rouge Police Department "Street Crimes Unit" was patrolling the 2800 block of Highland Drive. when he "observed a dark colored Chrysler Sebring. . .being operated with dark tinted windows" According to officer Lawrence he then activated his lights and the vehicle then pulled over into a large parking lot at the intersection of Highland Road and E. Roosevelt Street. Officer Lawrence exits his vehicle, and makes contact with the driver, Mr. Randall Williams.

**7.**

According to Officer Lawrence's report, Officer Lawrence was accompanied on this stop by BRPD Officers Joseph Carboni, Steven NEvels, and James Thomas, Jr.

**8.**

During the initial stop, Officer Lawrence "observed the odor of marijuana emitting from the interior of the vehicle." He then asked Mr. Williams and the front passenger, Sy'Naii Jordan, to exit the vehicle." Ms. Jordan being Mr. Williams minor niece.

**9.**

As Mr. Williams and the minor exited the vehicle, Officer Lawrence begin to question Mr. Williams about marijuana as assisting officers (James Thomas and Det. Steven Nevels) began approaching Mr. Williams' vehicle and officer Carboni stayed near Lawrence. Officer Lawrence then decided to detain Mr. Williams and placed him into handcuffs.

**10.**

At this time, Officer Lawrence tried searching the minor but Mr. Williams objected due to her age. She was later returned to her mom.

**11.**

Officer Lawrence then turned his attention back to Mr. Williams whom he had standing near his patrol unit. Officer Lawrence began to forcefully touch Mr. Williams' genitls during a "pat down." Officer Lawrence began to search inside Mr. Williams underwear using his finger. Officer Lawrence ran his finger down Mr. Williams back, into his buttock and under his buttcheek. Mr. Williams stated his discomfort at this time. Officer Lawrence then  pulled Mr. Williams pants and underwear away from his body to look inside underwear at which time the officer pulled down his pants and exposed Mr. Williams penis to his minor niece who was still in view.   Then, officer Lawrence squeezed Mr. Williams genitals and penis so hard that he would later be treated for a UTI. Mr. Williams, now in extreme pain, again verbally told Officer Lawrence "this aint no lawful search." Officer Nevels who was nearby heard Williams complaint but just looked away.

**12.**

As officer Lawrence was socially battering Mr. Williams, officer Thomas verbally advised him that "a rolling paper containing marijuana" and a firearm had been located inside of the vehicle. The located handgun was a Generation 5 Glock 179mm (Serial No. BNMF206). According to the officers, the Criminal Information Unit (CIU) later advised the handgun was reported stolen through the Baton Rouge Police Department. However, while still on scene Mr. Williams advised officers that he had a medical marijuna card and that the gun belonged to his cousin Jessica who had given him the gun. Mr. Williams repeatedly asked the officers to use his cellphone to call Jessica (who had the gun returned to her months earlier by BRPD). Mr. Williams asked the officers at least twice to call to avoid his arrest on gun charges but officers refused. Mr. Williams was later booked at the East Baton Rouge Parish Prison for (1) Illegal Possession of Stolen Firearm(s), (2) Possession of Marijuana, and (3) Window Tint Violation.

**13.**

However, before booking Mr. Williams into the East Baton Rouge Parish Prison, officers Lawrence, Nevels, and Thomas transported him to the now infamous BRAVE Cave. There officer Lawrence placed Mr. Williams behind a curtain that was located near a metal desk where the officer forced Mr. Williams to strip naked. Mr. Williams asked the officers, why he had been brought there and why they were stripping him before taking him to parish prison to which no response was provied. Officer Lawrence continued with his unconstitutional Strip[1] and Body Cavity[2] searches of Mr. Williams, instructing him to bend and cough while looking closely with what Williams believed to be a flashlight.  Mr. Williams verbally advised the officer that he wasn't supposed to do this again to which no response was given. No other officer stepped in to prevent this from happening to Mr. Williams. Once the search was complete he was told to dress himself. The officers didn't question Mr. Williams about anything else and he was transported to the jail.

---

[1] Strip Search: A visual inspection of an individual who has disrobed including the hair, mouth, ears, nostrils, groin area and buttocks to locate weapons, contraband or evidence. *See* BRPD Policy Manual General Order 281.

[2] Body Cavity Search: A search involving not only the visual inspection of skin surfaces but the internal physical examination of body cavities and, in some instances the stomach cavity, for weapons, evidence or contraband.*See* BRPD Policy Manual General Order 281.

## Count I
## Federal Constitutional Claims
## Violation of 42 U.S.C. § 1983:
## *Monell* Claims
## (PLAINTIFF AGAINST DEFENDANTS CITY OF BATON ROUGE and PARISH OF EAST BATON ROUGE)

### 14.

A municipality may not be vicariously liable under § 1983 for an injury caused by its employee or agent. *Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658, 694 (1978). However, a municipal entity can be liable in a § 1983 case premised on:

(1) an official policy;

(2) a "longstanding practice or custom which constitutes the standard operating procedure of the local government entity";

(3) the act of an "official whose acts fairly represent official policy such that the challenged action constituted official policy"; or

(4) where "an official with final policy-making authority 'delegated that authority to, or ratified the decision of, a subordinate.' " *Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008); *see also Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

### 9.

Based on knowledge, information, and belief the Baton Rouge Police Department has written policies and longstanding customs which constitute the standard operating procedure of the local government entity whereby its officers routinely violate the constitutional rights of American citizens.

### 10.

*Monell* requires a plaintiff to allege that a municipality has a custom which constitutes the standard operating procedure of the local government entity.[3] **In the instant matter, the custom and the written policy is that the Baton Rouge Police Department violates American Citizens' Fourth Amendment Rights**. Those rights include but are not limited to the right to be free from unreasonable force, unreasonable searches, seizures and arrest. To prove that the

---

[3] *Jackson v. Barnes*, 749 F.3d 755, 763 (9th Cir. 2014).

municipality had a custom resulting in violating American Citizens' 4th Amendment Rights. The Plaintiff

Crystal:24-cv-00394-BAJ-SDJ    Document 1    04/16/24    Page 6 of 32

must shown  that:

**(1) <u>Mr. Randall Williams possessed a constitutional right of which he was deprived;</u>**

Presently, Mr. Randall Williams is an American citizen who has all the rights and privileges afforded to him under the United States Constitution. Therefore, Mr. Randall Williams has a 4th Amendment right to be free from excessive or unreasonable searches and seizures.

**(2) <u>The municipality has a written policy which violates the 4th Amendment:</u>**

**A.** BRPD Policy General Order No. 281 Section III Strip Search states in pertinent part:

" III. Strip Search
  A. Arrestees will not be subjected to strip searches unless the officer has articulate, reasonable suspicion that this particular arrestee may have weapons or contraband on his person. **Reasonable suspicion** will be based on the following factors:

  1. The nature of the offense charged;
  2.  The arrestee's appearance and conduct;
  3. The circumstances of the arrest.
  4. The arrestee's prior record."

**(3)  <u>The municipality has a longstanding custom which amounted to a policy:</u>**

The Baton Rouge Police Department has a long standing policy of conducting unconstitutional strip and body cavity searches of persons in their custody. During a press conference that was held in May of 2021, the Baton Rouge Police Department Chief affirmed the custom of unconstitutional strip searches which is the basis of the complaint. Undersigned counsel has conducted interviews of persons who have been held at the Brave Cave, whereby strip and body cavity searches were performed upon persons in violation of their constitutional rights. In particular, both Jeremy Lee[4] and Mrs. Ternell Brown were both victims of these unconstitutional acts. Therefore the municipality has a well established custom of unconstitutional searches.

**(4) <u>The custom amounts to deliberate indifference on behalf of the defendants</u>:**

**Examples of BRPD's history of indifference to Officer Lawerence's misconduct**

---

[4] Plaintiff in Middle District of Louisiana case 3:23-cv-01229, *Lee v. Lawerence et al.*

I.      During Troy Lawrence Jr.'s short tenure as a BRPD officer, his dangerous temper has led to numerous Internal Affairs investigations.

II.     Numerous incidents have involved Troy Lawrence Jr. needless escalating ordinary encounters, strip-searching young Black men, and responding to criticism with violence.

III.    Troy Lawrence, Jr. is the son of BRPD Officer Chief Troy Lawrence, Sr.

IV.     Apart from Chief Murphy Paul, Officer Chief Troy Lawrence Sr., currently the highest paid employee of BRPD.

V.      No BRPD employee with Troy Lawrence Jr.'s seniority has been suspended by BRPD more times for misconduct (without being terminated) than Troy Lawrence Jr.

VI.     No BRPD employee has been suspended by BRPD more times for misconduct (without being terminated) than Troy Lawrence Jr. in the past two years.

Further instances of deliberate indifference on behalf of the defendants include but are not limited to:

## A. CLARENCE GREEN INCIDENT

Shortly after joining the force, Ofc. Lawrence's misconduct made national news when he strip-searched a minor child in public; illegally searched that child's mother's apartment without a warrant; and then threated to beat a handcuffed detainee. Judge Brian A. Jackson (who was unaware of the threatened beating) described the January 1, 2020, incident as follows: "[T]he state agents in this case demonstrated a serious and wanton disregard for Defendant's constitutional rights, first by initiating a traffic stop on the thinnest of pretext, and then by haphazardly invading Defendant's home (weapons drawn) to conduct an unjustified, warrantless search. Such an intrusion, in abject violation of the protections afforded by the Fourth Amendment of the United States Constitution, which protects citizens against unwarranted governmental intrusions in their homes, may justifiably be considered to be a trespass subject to prosecution under La. R.S. 14:63."

After the home search, when BRPD officers attempted to pressure Ms. Green into consenting to allow them to take a DNA sample from her minor child, Clarence Green (from the back of a police car) advised his mother to call a lawyer.  Troy Lawrence Jr. then threatened to beat Clarence Green while he was handcuffed and locked in the back of a police car, stating: "If you don't shut the fuck up, I'm gonna come in and I'm gonna fuck you up. You think I'm playing

with you." Black eye 0094 Despite Judge Jackson's ruling on the filing of a civil rights lawsuit on January 2, 2021, and Baton Rouge Metropolitan Council's ratification of a $35,000 settlement in April 2021, no disciplinary investigation into Ofc. Lawrence was even *started* until (at earliest) May 24, 2021.

The investigation did not begin until after BRPD was contacted by journalists who had reviewed the footage that was released by the Green Family. The "disturbing" footage of Ofc. Lawrence's misconduct was featured on the national nightly news program CBS Evening News on May 27, 2021. On May 28, 2021, Chief Murphy Paul convened a press conference to address the national controversy caused by Troy Lawrence, Jr. and his colleagues.

At the press conference, the first question posed by journalists was: "This happened almost 17 months ago. Would we be here talking about this today if that video had not come out?" Chief Paul responded: "Absolutely we would have. . . . We just had the last hearing, what was it, the 13th I believe? The 13th of this month was our last hearing. And we still have two other officers that we have not completed that investigative process. So yes, we still would have made that information available to the public once those administrative processes have concluded."

Chief Paul omitted that the investigation into Ofc. Lawrence was not started before May 24, 2021. BRPD conducted an investigation into Troy Lawrence Jr.'s role in the Green Family case and Chief Paul personally reviewed the results. BRPD cleared Ofc. Lawrence of any violation of a "use of force" or search-and-seizure policies in connection with the initial stop of, initial search of, and threatened violence against Clarence Green and his brother.

On January 19, 2023, Ofc. Lawrence testified under oath about the aforementioned incident. Ofc. Lawrence swore that he "was suspended for cursing, using profanity." Ofc. Lawrence swore that he had no idea he was one of the "John Doe" defendants named in Clarence Green's civil rights suit. Ofc. Lawrence swore that he had no recollection of being featured on a national news broadcast or that Chief Paul had convened a press conference to discuss the incident he was involved in. Ofc. Lawrence swore that he did not believe that he had assaulted Clarence Green by threatening to "fuck him up" while he was handcuffed. Ofc. Lawrence

received Case 3:21-cv-00286-BAJ-SDJ    Document 134-4    06/16/24    Page 9 of 32 casadditional de-escalation counseling in connection with this incident.

**B.    SHERMANIE REED INCIDENT**

Officer Lawrence also used force and violence against another motorist, Shermanie Reed, who (correctly) told him he was acting unprofessionally on October 31, 2020. As in this case, BRPD officers grossly misrepresented the details of the encounter in a police report. In the Reed matter, BRPD conducted an investigation into the case and Chief Paul personally reviewed the results. Despite the fact that Ofc. Lawrence's interview with Internal Affairs included numerous obvious false statements the investigation cleared Ofc. Lawrence of all wrongdoing in that case apart from muting his body-worn camera.

In September 2021, undersigned counsel wrote Parish Attorney Andy Dotson to alert him to Ofc. Lawrence's misconduct and to highlight misrepresentations in his Internal Affairs interview. The letter sought a meeting with Chief Paul regarding the incident. Andy Dotson did not respond. Ms. Reed sued Ofc. Lawrence and Chief Paul for false arrest, excessive force, and First Amendment retaliation on October 30, 2021. Her complaint emphasized that Ofc. Troy Lawrence already "boast[ed] a lengthy record of professional misconduct during his short career."

In numerous conversations in late 2021 and early 2022, BRPD's attorney was advised by undersigned counsel that Ofc. Troy Lawrence was likely to maim or seriously injure someone in a future incident if they failed to intervene.

At Ofc. Lawrence's deposition on January 19, 2023, he repeatedly lied about the facts of the case. On January 21, 2023, BRPD's counsel was sent another letter highlighting examples of Ofc. Lawrence's perjury in his deposition and reiterating counsel's ongoing concerns: "Officer Lawrence is going to seriously injure or kill someone if he remains on the force. It is disheartening to learn that, since the filing of this lawsuit, Officer Lawrence has been *suspended* at least three (3) additional times for on-the-job misconduct and is currently the subject of an internal investigation for additional police brutality in December 2022."

Within 24 non-026f4-BAJ-SD Lawrence's deposition, BRPDeOffered Page 10o,0032ettlement

Within a non-confidential Lawrence's deposition, BRPD offered a $50,000 settlement to resolve the claims arising from that incident.  Ms. Reed was willing to settle for $40,000 and an apology, but BRPD refused to authorize the settlement.

BRPD still maintains that Ofc. Lawrence did nothing wrong apart from muting his body-worn camera during his encounter with Ms. Reed. Ofc. Lawrence received no additional training, counseling, or anger management in connection with this incident.

Throughout Shermanie Reed's lawsuit against Troy Lawrence Jr. and BRPD, the Department withheld information from their own lawyers regarding Troy Lawrence's misconduct. The department even altered and redacted responsive documents to hide the names of witnesses who would have pertinent information regarding Ofc. Lawrence's violent tendencies.  Throughout the litigation, BRPD's counsel was repeatedly advised by Ms. Reed's counsel that Ofc. Lawrence posed an ongoing danger to the people of Baton Rouge, and that it was likely he would maim or kill someone if he wasn't removed from the force.

## C.    TROY LAWRENCE ALSO TRIES TO FIGHT HIS COLLEAGUES

Ofc. Lawrence has twice been the subject of Internal Affair investigations for altercations with a 20-year veteran of BRPD, Cody Gunter.  On July 19, 2021, Ofc. Lawrence disregarded a direct order from Sgt. Gunter, telling him, "I don't give a fuck who you are." Ofc. Lawrence was suspended for 25 days.

On March 6, 2022, Ofc. Lawrence called Sgt. Gunter "a pedophile" and attempted to fight him in public. Ofc. Lawrence stated, "I'll fuck you up right here in front of everybody."  Ofc. Lawrence then took off his vest and attempted to fight Sgt. Gunter, who walked away to deescalate the situation. Ofc. Lawrence then called Sgt. Gunter "a pussy" a told him that he was going to "kick [his] ass."  The events occurred in front of a crow of college students.  When Sgt. Gunter returned to his car, Ofc. Lawrence followed him, yelling, "Get out the car you pussy."

Under oath, Sgt. Gunter explained to Internal Affairs that he believed Ofc. Lawrence was dangerous and that he did not want to work in his presence. He expressed his fear: "I don't know what he is capable of."

```
issue with me."


-Do you have any personal vendettas against Ofc. Lawrence?
██████████ replied, "No."


-Is there any reason that you feel you cannot work with or
in the presence of Ofc. Lawrence and if so, please explain?
██████████ replied, "I would not be comfortable working in
the presence of Ofc. Lawrence because I don't know what he
is capable of.  I feel that he has a lot anger towards me
and it's not going away."
```

Ofc. Lawrence was suspended for this latter incident, as well.

In at least one of the incidents, Ofc. Troy Lawrence Sr. was made aware of his son's wrongdoing as the incident was happening, and was asked by other BRPD officials to intervene with his son.   Ofc. Troy Lawrence Sr. was told that his son would be arrested if he did not promptly report to superior officers in connection with one of his altercations with Sgt. Gunter.

### D.     ADDITIONAL INTERNAL AFFAIRS INVESTIGATIONS

On December 22, 2022, a local television station reported a story entitled "BRPD Opens Internal Investigation after Cell Phone Video Captures Violent Confrontation." *See* https://www.wbrz.com/news/brpd-opens-internal-investigation-after-cell-phone-video-captures-violent-confrontation/ (last accessed June 21, 2023).  The video in question depicts Ofc. Troy Lawrence, Jr. repeatedly striking a handcuffed individual in the back of a police car.  When questioned about the incident under oath on January 19, 2023, Ofc. Troy Lawrence Jr. claimed to have no recollection of the incident and no knowledge of any Internal Affairs investigation

suspended on at least one other occasion in 2022, although this information was never disclosed during discovery.

### E.     CHAVIS/SANDERS INCIDENT

In yet another recent incident, Ofc. Lawrence publicly attacked two young Black men after they (correctly) criticized him for acting unprofessionally.  On October 8, 2022, Ofc. Lawrence picked a fight with two young men—Holden Sanders and Emanuel Chavis—after BRPD officers shot their cousin, Malik Chavis. Ofc. Lawrence profanely ordered the men to leave the grounds of a hospital. When the men informed him that he was acting unprofessionally, he physically attacked them both. The assault involved grabbing Holden Sanders by the neck and hair, as Ofc. Lawrence unsuccessfully sought to rip him out of his car. Other (non-BRPD) officers witnessed the attack, but refused to join in Ofc. Lawrence's brutality, even as he screamed at them: "CAN Y'ALL FUCKING HELP?! . . . WHAT THE FUCK ARE Y'ALL DOING?! YOU'RE NOT GOING TO HELP?!"

He also physically attacked their mother. Ofc. Lawrence sadistically placed extremely tight handcuffs on Emanuel Chavis, and in response to his repeated requests to loosen the cuffs, responded: "Well, whenever you fight with me . . . that's what happens."

In that instance, BRPD Officers (including Officer Lawrence) made up false allegations that Chavis and Sanders engaged in criminal conduct justifying his brutality. All criminal charges against both men were recently dropped.


### F. DETECTIVE MATTHEW WALLACE JEREMY LEE INCIDENT

On January 9, 2023, police arrived in front of a house in the area of 5400 Cadillac Street, Baton Rouge, Louisiana. Mr. Lee was arrested by Det. Wallace and Office Lawrence, without reasonable suspicion or probable cause. He was placed in the back of a BRPD vehicle. Minutes after arriving on the scene, while searching for and discussing possible evidence with Det. Matthew Wallace, Off. Lawrence turned off the audio on his body-worn camera.  Less than three minutes

later, with <del>Case Body-won 2024 BBA-dud Still Off, uOffen Lawrence 16/24 Det. Wallace app</del>roached the police car in which Mr. Lee was sitting. They began swearing at him and pushing him. Upon opening the backseat door, Off. Wallace commanded Mr. Lee to "get your ass over here."

Although his audio was on during this exchange, Det. Wallace also periodically turned his body-worn camera off and on throughout the investigation during the day and the interrogations in the evening. Ofc. Lawrence also turned his camera on and off, and frequently muted his body-worn, on the afternoon and evening in question.

According to Mr. Lee's arrest report, Mr. Lee is 5'6", 125 pounds. Both Off. Lawrence or Det. Wallace are substantially taller and substantially larger than Mr. Lee. Throughout this interaction, the two officers repeatedly accused Mr. Lee of "resisting."

Mr. Lee stated that he was not resisting and that he would comply with whatever they wanted. Despite Mr. Lee's cooperative words and actions, Off. Lawrence and Det. Wallace continued to push a handcuffed Mr. Lee, pull his arms, and force him down in the middle of a paved street, where they pulled down his pants to search him.

Mr. Lee repeatedly told the officers, who were shoving and throwing Mr. Lee around, that they were hurting him. While Mr. Lee was handcuffed and on the ground, Off. Lawrence told him, "I'm about to bat the living crap out of you." Frightened and seeking some kind of fairness, Mr. Lee told the officers to "turn your [body-worn] camera on" and to "bat me then." Mr. Lee continued to repeatedly inform the officers that they are hurting him even though he is trying to cooperate. Ofc. Lawrence and Det. Wallace continued to act unprofessionally toward Mr. Lee.

The following conversation took place shortly after the strip-search:

Lee: What am I getting arrested for?

Wallace: You're being detained.

Lee: How? For what?

Wallace: Because I said so.

After the unnecessary strip search and Ofc. Lawrence's conflict with the crowd, Mr. Lee was not transported to the police station, but to an unaddressed off-site warehouse also known as

the "Brave Cave." There, Mr. Lee was handcuffed, beaten, and interrogated by Officers in a setting more closely resembling of a torture scene from the TV show *24* than a lawful police interrogation.[5] When first arriving to this torture warehouse, Mr. Lee was handcuffed in a holding cell with two other arrestees, Deondre Tate and Seyveon Moore.

Mr. Lee was removed from the holding cell, where he was initially held with Mr. Tate and Mr. Moore, by Officer Troy Lawrence Jr., Detective M. Wallace, and another unknown Officer. Mr. Lee was alone with Officer Troy Lawrence Jr., Detective M. Wallace, and another unknown Officer in a separate warehouse room. There he was repeatedly kicked and punched by Officer Troy Lawrence Jr., Detective M. Wallace, and another unknown Officer. Mr. Lee's screams for help and screams in pain could be heard throughout the facility. The officers laughed at and mocked Mr. Lee for screaming for help.

The officers beat Mr. Lee so badly that they fractured his rib. When the officers returned Mr. Lee to the holding cell, both witnesses saw bruises on his eye, face, and neck, as well as bruises and scratches to his torso. Soon after the beating, Mr. Lee was interrogated by BRPD, Mr. Lee suffered physical injuries so severe, the local jail rejected his admission until he received medical help. He was taken to Our Lady of the Lake North Baton Rouge Urgent Care Department, where they officially diagnosed him with a fractured left rib, chest pain, and left facial pain. Mr. Lee also reported trouble breathing. Mr. Lee still faces pending charges under docket number DC-23-0170 in the 19th JDC for "Resisting an Officer" (i.e., being beaten by Defendants).

## G. BRPD'S LONG HISTORY OF RETALIATING AGAINST CRITICS AND FOSTERING A CULTURE OF IMPUNITY FOR POLICE VIOLENCE

### I. Clarence Green Retaliation

When Ofc. Lawrence's wrongdoing in the Clarence Green matter became a national news story, BRPD filed a petition in state court seeking to have the Green Family's attorney held in

---

[5] Based off disparate body cam videos, the warehouse seems to consist of several rooms: a main room with computers and filing cabinets, at least two holding cells, and a larger room with a chair where interrogations take place.

contemplating releasing the body camera footage, the statutory penalty for this species of contempt sought by BRPD was up to six months' imprisonment. In a 92-page opinion, Judge John W. deGravelles subsequently issued an injunction halting this prosecution, rejecting the applicability of "*Younger* abstention" and "find[ing] the overwhelming evidence in this case shows that the City/Parish acted in bad faith and in retaliation against Frampton for Frampton's issuance of a press release and Video which cast BRPD in a bad light." *Frampton v. City of Baton Rouge/Par. of E. Baton Rouge*, 21-CV-362-JWD-SDJ, 2022 WL 90238, at *35 (M.D. La. Jan. 7, 2022). Baton Rouge taxpayers paid over $85,000 to settle the lawsuit. BRPD still maintains that they did nothing wrong in retaliating against the attorney who served as a whistleblower in exposing Ofc. Lawrence's misconduct.

## II.    Alton Sterling Retaliation

In response to BRPD misconduct, thousands of Louisiana residents protested BRPD in 2016. BRPD responded with mass arrests of the protesters. Protestors argued the arrests were in retaliation for their exercise of their First Amendment rights to criticize BRPD, and their Fourth Amendment rights. They asserted *Monell* claims against BRPD and Baton Rouge, arguing that the wrongdoing was not just the result of individual official wrongdoing, but rather a policy or custom attributable to Baton Rouge itself.

This Court rejected defendants' efforts to dismiss the protestors *Monell* claims. *See* Ruling and Order, *Imani v. City of Baton Rouge*, Case 3:17-cv-00439-JWD-EWD, Dkt. 347 (July 14, 2022). The City of Baton Rouge settled the case mid-trial for $1,170,000.

## III.    Internal Whistleblower Retaliation

After criticizing BRPD leadership, BRPD union vice president Siya Creel was unlawfully terminated by BRPD Chief Murphy Paul. The Municipal Fire & Civil Service Board unanimously decided Creel was wrongfully terminated. East Baton Rouge City-Parish ultimately paid $90,000 to settle Creel's claims of retaliation. A veteran officer in the BRPD Internal Affairs Division, John Dauthier, has also accused BRPD

Chief Murphy "as of-this date is wrong doing, publicly claiming 'blatantly partial' doctrine for enforcing policies of the BRPD." Dauthier has alleged that he was retaliated against in part because he criticized BRPD leadership, whereas other officers who were well-liked by BRPD leadership were either not disciplined or less severely disciplined for similar wrongdoing.

## IV.    Systemic Failings

In April 2023, the non-profit news outlet VERITE released an extraordinary six-part expose called "In The Dark," documenting systemic BRPD violence and hostility toward those who questioned BRPD. *See* https://veritenews.org/tag/baton-rouge-police-department/ (collecting stories). Among other revelations, VERITE reported that the *sole* police officer investigated (let alone disciplined) for wrongdoing in connection with the 2016 protests was a BRPD officer who was investigated for questioning the legality of the police response at the protest. This reporting was accurate. VERITE reported that 100% of use-of-force complaints made in 2017 were adjudicated "exonerated" or "not sustained" by BRPD Internal Affairs. This reporting was accurate.

The reporting also documented a department plagued by a culture of impunity, with meritorious citizen complaints regularly disregarded. Apart from minor errors that have since been included flagged as "Corrections" to the public available articles, there are no inaccuracies in the VERITE reports.

Illustrated above are several instances of Constitutional violations of American citizens' Fourth Amendment right to be free from unreasonable searches, seizures, arrests and excessive force. Plaintiff maintains that over the last several years the actions of BRPD officers which violated state and federal laws and offended citizens' Constitutional rights were condoned by BRPD. In all of the above instances, complaints were filed with the Baton Rouge Police Department or were attempted to be filed before the complainant was turned away. These complaints did not result in discipline for the offending officers. Furthermore, these acts clearly

illustrate that the Baton Rouge Police Department, Chief Paul and the City of Baton Rouge, are complicit in the actions of their Officers, which violated citizens Fourth Amendment rights. These acts also illustrate that the Defendants were aware of the repeated violations, and that the Defendants have failed to take reasonable measures to mitigate and/or cease these acts by their officers.

**(5) <u>The custom and policy are the moving forces behind the constitutional violations</u>:**

All persons have a Fourth Amendment Right to be free from unreasonable searches, seizures, and arrests. Here, when Baton Rouge Police Officers (1) strip and perform body cavity searches upon hundreds of citizens, and  (2) effectuated numerous illegal arrests, and warrantless searches and seizures without facing disciplinary consequences for their unconstitutional acts, a custom was created within BRPD. The aforementioned unconstitutional conduct committed by the officers of BRPD is so frequent and consistent that it has become a traditional method of carrying out the custom of violating the 4th amendment rights of citizens within East Baton Rouge Parish. Plaintiff maintains that those frequent and consistent acts/customs were the driving force for violations of Mr. Randall Williams 4th Amendment right to be free from unreasonable searches, seizures, arrest when:

1. Officer Lawrence illegally carried out the on-scene strip search of Mr. Randall Williams in front of his minor niece; and
2. When an Officer Lawrence illegally conducted the strip and visual body cavity search of Mr. Randall Williams without probable cause and/or a warrant at the BRAVE Cave.

Furthermore,  according BRPD Policy General Order No. 281 Section III Strip Search states in pertinent part:

" III. Strip Search
   A. Arrestees will not be subjected to strip searches unless the officer has articulate, reasonable suspicion that this particular arrestee may have weapons or contraband on his person. **Reasonable suspicion** will be based on the following factors:

   1. The nature of the offense charged;
   2.  The arrestee's appearance and conduct;
   3. The circumstances of the arrest.
   4. The arrestee's prior record."

Therefore, it is clear that the long standing custom and policy of strip and body cavity searches were the driving force when Mr. Randall Williams was arrested and subjected to the subsequent illegal strip and body cavity search.

## 11.

For all the reasons delineated in the paragraph above, Plaintiff maintains that the the Baton Rouge Police Department, the City of Baton Rouge, and the Parish of East Baton Rouge have been placed on notice that BRPD Officers have a pattern and practice of violating persons' 4th Amendment Rights to be free from illegal searches, seizures, and illegal arrest. Moreover, the Defendants have been on notice of said pattern and practice since the Shermanie Reed on October 31, 2020.

## 12.

Baton Rouge Police Department Manual General Order No. 100  entitled "Authority and Organization of the Department" states in pertinent part :

"III. Organizational Responsibilities of the Department
    A.   Police Administration
The City-Parish Plan of Government, Section 6.02. gives the Chief his authority: 'The chief of police shall be in direct command of the department and shall have power to appoint and remove all other officers and employees of the department. He shall assign all members of the department to their respective posts, shifts, details, and duties. He shall make rules and regulations consistent with this plan of government, the ordinances of the city council, and the laws of the state, concerning the operation of the police department, the conduct of its officers and employees, and their equipment training and discipline, and the penalties to be imposed for infraction of such rules and regulations, which when approved by the city council shall be binding on all members of the department.'

The City-Parish Code of Ordinances also extends certain authority to the Chief of Police: "The police force of the city shall be uniformed in such manner as may be prescribed by the chief of police." (4:3) "The members of the police department shall, in all things pertaining to their office, obey absolutely the orders and directions of the chief of police.'(4:55)

.   .   .   .

F. The above listed offices, bureaus, divisions, and sections are all ultimately responsible to the Chief of Police. Further, the Chief of Police shall also have the power to restructure or reorganize any or all such areas of responsibility, as he sees fit, in order to increase efficiency and to better serve the citizens of  Baton Rouge."

Furthermore, Baton Rouge Police Department Manual General Order No. 112   entitled

"The discipline process must reinforce positive behavior. It must identify problem areas and use training, counseling and guidance to correct any deficiencies. However, it is the Department's responsibility to correct deficiencies that training and counseling fail to correct. Therefore, sanctions shall be imposed for repeated violations."

Therefore, as it relates to the claims and violations outlined in the instant *complaint*, the aforementioned cited law and policy makes it clear that the Baton Rouge Chief of Police is the policy maker for the Baton Rouge Police Department.

**Count II**
**Federal Constitutional Claims**
**Violation of 42 U.S.C. § 1983:**
**Unreasonable search and seizure in Violation of Fourth and Fourteenth Amendment Rights**
**(PLAINTIFF AGAINST INDIVIDUAL OFFICER DEFENDANTS)**

**13.**

Plaintiff repeats and realleges all of the paragraphs in this complaint as if fully set forth herein. As more fully described above, Defendants Troy Lawrence, Jr., Steven Nevels, Joseph Carboni, and James Thomas, Jr., deprived Plaintiff Mr. Randall Williams of his constitutional right to be free from unreasonable searches and seizures.  Defendants arrested Mr. Randall Williams without probable cause to believe that he possessed any contraband on his persons but conducted unconstitutional Strip and Body Cavity searches of Mr. Williams anyway. Further, BRPD had returned the weapon to the lawful owner and had failed to update their system. This failure resulted in the arrest of Mr. Williams for possession of a stolen firearm even though the gun was no longer missing from the owner. As a direct and proximate result of this deprivation of his constitutional right to be free from unreasonable searches and seizures, Plaintiff suffered injuries, including, but not limited to, significant emotional distress.

**Count III**
**Federal Constitutional Claims**
**Violation of 42 U.S.C. § 1983:**
**Failure to Train, Supervise, and Discipline its Officers**
**(PLAINTIFF AGAINST DEFENDANTS CITY OF BATON ROUGE and PARISH OF EAST BATON ROUGE)**

**14.**

## **Failure to Train, Supervise, or Discipline**

Plaintiff maintains that the City of Baton Rouge, the Parish of East Baton Rouge and Chief Paul have failed to supervise and discipline BRPD officers when they violate a person's 4th Amendment constitutional rights. As illustrated above, BRPD officers have a long history of violating these rights. Further illustrative of the government's failure to supervise and discipline its deputies for violation of persons 4th amendment constitutional rights, is the fact that despite complaints filed by Mr. Lee against Officer Lawrence in January 2023 the department did not discipline Lawrence nor the other officers who were involved in the savage attack upon him; which was a direct violation of department policy as it relates to BRPD Policy and Procedure Manual

1.  General Order No. 107 Law Enforcement Code of Ethics/ Oath of Office;
2.  General Order No. 112
    a.  3:19;
    b.  3:22;
    c.  3:23
3.  General Order No. 131[6]
4.  General Order No. 135

**15.**

Moreover, Plaintiff maintains that the City of Baton Rouge, the Parish of East Baton Rouge and the BRPD Chief have failed to supervise and discipline BRPD officers when they violate a departmental policy. Specifically, BRPD Policy Manual General Order No. 108[7] thereby

---

[6] **General Order No. 131**– Procedures– III. Use of Deadly Force–C. A report shall be submitted whenever an employee takes an action that results in (or is alleged to have resulted in) injury or death of another person.

[7] POLICY— The purpose of this policy is to unequivocally state that bias-based profiling in law enforcement is totally unacceptable, to provide guidelines for officers to prevent such occurrences, and to protect our officers when they act within the dictates of the law and policy from unwarranted accusations. It is the policy of this department to patrol in a proactive manner, to investigate suspicious persons and circumstances, and to enforce the motor vehicle laws. In so doing, officers will only stop or detain citizens when there exists reasonable suspicion to believe they have committed, are committing, or are about to commit, an infraction of the law.

DEFINITIONS — Bias based profiling: The detention, interdiction, or other disparate treatment of individuals based solely on a common trait of a group. This includes race, ethnic background, gender, sexual orientation, economic status, age, cultural background or any other identifiable group

Reasonable suspicion: Suspicion that is more than a mere hunch. It is based on a set of facts and circumstances that would cause a reasonable person to believe that an infraction of the law has been committed, is about to be committed, or is in the process of being committed, by the person or persons under suspicion. This can be based on the observations of a police officer combined with his or her training and experience, and/or reliable information received from credible outside sources.

PROCEDURES — 1. Standards – A.All investigative detentions, traffic stops, arrests, searches and seizures or forfeitures of property by officers will be based on a standard of reasonable suspicion Or probable cause. Any action taken will not be based on face, ethnic background, gender, sexual orientation, economic status, age, cultural background, or any other identifiable group

creating a pattern and practice of racial discrimination in District 10/34 where BRPD First District is

located) is 57.82% Black and 34.61% White.[8]

**2020 Census Data for Baton Rouge by District and Race**

| District | Members | White | Black | Other | Total |
|---|---|---|---|---|---|
| District 1 | Brandon Noel | 51.57% | 41.99% | 6.43% | 40,702 |
| District 2 | Chauna Banks | 10.91% | 85.29% | 3.80% | 31,267 |
| District 3 | Rowdy Gaudet | 56.66% | 24.11% | 19.22% | 45,381 |
| District 4 | Aaron Moak | 60.15% | 25.38% | 14.47% | 38,602 |
| District 5 | Erika L. Green | 4.79% | 89.65% | 5.55% | 34,277 |
| District 6 | Cleve Dunn Jr. | 20.98% | 64.97% | 14.04% | 34,541 |
| District 7 | LaMont Cole | 22.01% | 72.51% | 5.48% | 33,966 |
| District 8 | Denise Amoroso | 43.96% | 37.54% | 18.49% | 38,229 |
| District 9 | Dwight Hudson | 63.19% | 20.96% | 15.85% | 42,402 |
| District 10 | Carolyn Coleman | 34.61% | 57.82% | 7.58% | 37,492 |
| District 11 | Laurie Adams | 63.47% | 22.98% | 13.54% | 40,805 |
| District 12 | Jennifer Racca | 61.07% | 25.78% | 13.15% | 39,117 |
| **Total** | **N/A** | **N/A** | **N/A** | **N/A** | **456,781** |

Further, evidence of the city, parish and Chief's notice of this pattern and practice of racial discrimination is during a press conference on August 29, 2023, Deputy Chief Myron Daniels stated there is **nothing secretive about the facility** which has been used for over twenty years and that as of the date of the press conference over 350 citizens had been taken to the "BRAVE Cave." Based on knowledge, information, and belief, undersigned counsel maintains that the overwhelming majority of the individuals taken to the secretive location were African American. This is a clear disparity, because the people detained, arrested and taken to the BRAVE cave is not consistent with the racial composition of the district patrolled by the Street Crimes Unit in District 10. Thus, the city/parish government knew of the violation of General Order No. 108.

**16.**

---

characteristic.    B. Officers must be able to articulate specific facts, circumstances and conclusions which support probable cause or reasonable suspicion for an arrest, traffic stop or investigative detention.    C.Officers may take into account the reported race, ethnicity or national origin of a specific suspect that links a person to a particular criminal incident or links a specific series of crimes to a group of individuals of a particular race/ethnicity.
[8] https://www.brla.gov/801/District-Map-Demographics.

The above instances illustrate that the defendants have a pattern and practice of failing to supervise its officers when they fail to discipline them for violating a person's constitutional rights and for violating departmental policies.

## THE CASE AT BAR

In the instant matter, the BRPD failed to supervise (1)Officer Joseph Carboni, (2) Officer Troy Lawrence Jr., (3) officer Steven Nevels, and (4) Officer James Thomas, Jr., for the following reasons:

1. There is no evidence Officer Lawrence Jr. was retrained nor disciplined following the beating of Jeremy Lee in January of 2023 as required under BRPD Policy Manual General Order No. 112[9];

2. There is no evidence that any BRPD officer was disciplined for the beating of Jeremy Lee in violation of BRPD Policy Manual General Order No.3:19, 3:20, 22, 23[10];

3. There is no evidence that any BRPD officer was disciplined for failure to follow BRPD Policy Manual General Order No. 135[11] as it relates to record of Jeremy Lee's medical treatment.

Hence, when the defendants failed to discipline its officers for violating Mr. Lee's constitutional rights, and for violating BRPD Policy they failed to properly supervise and discipline the officers. These failures coupled with the previously stated instances implies a conscious, affirmative choice by the defendants to affirm the acts of Officer Troy Lawrence Jr., and other BRPD officers because they were not placed on leave or retrained, nor were any other alternative disciplinary options considered to address the officers violations of Mr. Lee's constitutional rights and for the clear departmental policy violations as cited above. These officers then went on to

---

[9] Deputies will receive periodic training on this policy and demonstrate their knowledge and understanding.

[10] **General Order No. 112- 3:19**- Falsification of Documents-No employee shall willfully falsify any form, report, or document.; **General Order No. 112- 3:20**-Use of Force- Every member of the Department shall use only the force necessary to affect an arrest or maintain custody of a suspect. All members shall abide by the provisions of the Departmental policy with respect to the use of Non-Lethal Force and the Use of Deadly.; **General Order No. 112- 3:22**-Violation of Laws- No member will willfully or by neglect or omission violate any Federal, State or City ordinance, or statute.; **General Order No. 112- 3:23**- Truthfulness- Every member of the Department is required to be truthful except while conducting investigations that require surreptitiousness.

[11] **General Order No. 135- II. Notification of Supervisor– C.** The first concern is to provide medical attention to the injured. If the primary employee is hospitalized, the supervisor will make the appropriate assignments to carry on the investigation. If the subject is hospitalized, he will remain under guard until booked. Upon release, the employee booking the subject will obtain medical release forms and attach copies to the Use of Force Report. Any injured employee will make available to the department copies of his medical reports as needed.

## Count IV
## Federal Constitutional Claims
## Violation of 42 U.S.C. § 1983:

### Failure to Intervene
### (PLAINTIFF AGAINST INDIVIDUAL OFFICER DEFENDANTS)

**17.**

It is widely recognized that all law enforcement officials "have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement Deputies in their presence"[12] and a police officer may be held liable under § 1983 if he "fails or refuses to intervene when a constitutional violation. . .takes place in his presence."[13]

**18.**

In the instant matter, the rights of Mr. Williams were violated in the following ways:

### A. Officer Lawrence, Jr.

1. When Officer Lawrence illegally conducted a strip search of Mr. Williams in public and in view of a minor child;
2. When Officer Lawrence illegally conducted a second strip search and visual body cavity search of Mr. Williams without probable cause when there was no indication that he was carrying contraband; and

### B. Officers Nevel, Carboni, and Thomas, Jr.

1. When Officer Nevel, Carboni, and Thomas, Jr. participated in the illegal seizure of Mr. Williams when it was easily verifiable that he had not violated the laws of Louisiana as it relates to the lawful possession of a firearm (which was not stolen) and lawfully obtained a marijuana prescription.

All four officers failed to intervene in the illegal conduct of their counterparts and failed to write reports documenting the strip search and visual body cavity search of Mr. Williams which they witnessed either on scene or in the BRAVE Cave.

### Count V

---

[12] *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994).
[13] *Smith v. Mensinger*, 293 F.3d 641, 650-51 (3d Cir. 2002).

**State Law Claims**
**(PLAINTIFF AGAINST DEFENDANTS CITY OF BATON ROUGE and PARISH OF EAST BATON ROUGE)**

**19.**

The City of Baton Rouge and East Baton Rouge Parish are responsible and liable to Plaintiff for the damages and injuries Mr. Randall Williams has suffered as a result of Defendants' actions and/or inactions pursuant to:

    A. Louisiana Code of Civil Procedure Article 2315, which provides that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it;"

    B. Louisiana Code of Civil Procedure Article 2316, which provides that "[e]very person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill;"

    C. Louisiana Code of Civil Procedure Article 2317, which provides that "[w]e are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody;" and

    D. Louisiana Code of Civil Procedure Article 2320, which provides that "[m]asters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed…responsibility only attaches, when the masters or employers…might have prevented the act which caused the damage, and have not done it."

**20.**

Under the law of the State of Louisiana, the actions and/or inactions of Baton Rouge Police Department officers as alleged herein for which The City of Baton Rouge and East Baton Rouge Parish are liable through *respondeat superior* are violations of Louisiana tort and criminal laws of:

    A. Battery;
    B. Assault; and
    C. Intentional Infliction of Emotional Distress
    D. False Imprisonment
    E. Negligence

**21.**

    a. **Battery** - "[a] harmful or offensive contact with a person, resulting from an act intended

In the instant case, officers with the Baton Rouge Police Department, in their capacity as officers employed by BRPD, initiated contact with Mr. Williams for possible traffic violations. He was strip searched on scene and had his genitals squeezed so hard that he later required medical treatment for a UTI. He was subsequently taken to the BRAVE Cave and was subject to unconstitutional Strip[15] and Body Cavity[16] searches. After the unconstitutional searches he was booked into parish prison and charges were later dropped when the owner (Jessica) provided Williams with paperwork showing that the gun was not stolen and had been returned to her. Said paperwork coming from BRPD themselves.

   b. **Assault** - 'a threat of such a harmful or offensive contact."[17]

In the instant matter, an assault occurred when Mr. Williams was detained by BRPD officers on the scene of the traffic stop and his genitals were grabbed by officer Lawrence causing extreme discomfort and later required treatment. A second assault occurred when Williams was subjected to an offensive, unwarranted, and invasive search of his person in an open facility by a BRPD officer. All the above listed instances were assaults as they placed Mr. Williams in apprehension of receiving further injury at the hands of BRPD Officers.

   c. **Intentional infliction of emotional distress- "**the Louisiana Supreme Court has outlined the three elements a plaintiff must establish in order to bring a claim for intentional infliction of emotional distress: 1) extreme and outrageous conduct by the defendant; 2) severe emotional distress suffered by the plaintiff; and 3) the intent by the defendant to inflict severe emotional distress or the knowledge that severe emotional distress was certain or substantially certain to result from the defendant's conduct."[18]

---

[14] *Cage v. Wood*, 484 So.2d 850 (La.App. 1st Cir.1986); *Ross v. Sheriff of Lafourche Parish*, 479 So.2d 506 (La.App. 1st Cir.1985); *Vascocu v. Singletary*, 404 So.2d 301 (La.App. 3d Cir.1981); *Ashland Oil, Inc. v. Miller Oil Purchasing Co.*, 678 F.2d 1293 (5th Cir.1982); Restatement (Second) of Torts, American Law Institute § 13 (1965); F. Stone, Louisiana Civil Law Treatise, Tort Doctrine § 124—130 (1977); W. Prosser and W. Keeton, The Law of Torts, § 9 (5th ed. 1984); F. Harper and F. James, The Law of Torts, § 3.1—3.3 (2nd ed. 1986).

[15] Strip Search: A visual inspection of an individual who has disrobed including the hair, mouth, ears, nostrils, groin area and buttocks to locate weapons, contraband or evidence. *See* BRPD Policy Manual General Order 281.

[16] Body Cavity Search: A search involving not only the visual inspection of skin surfaces but the internal physical examination of body cavities and, in some instances the stomach cavity, for weapons, evidence or contraband.*See* BRPD Policy Manual General Order 281.

[17] *See* 512 So. 2d 389 (La. 1987).

[18]*White v. Monsanto Co.*, 585 So.2d 1205, (La. 1991); *Karl J. Pizzalotto, M.D., Ltd. v. Wilson*, 437 So.2d 859 (La.1983); *Coppage v. Gamble*, 324 So.2d 21 (La.App. 2d Cir.1975); F. Stone, Louisiana Civil Law Treatise, Tort Doctrine, § 125—127 (1977); F. Harper and F. James, The Law of Torts, § 3.3 (2nd ed. 1986). Cause of action for intentional infliction of emotional distress is viable in Louisiana, generally in accord with legal precepts set forth in Restatement (Second) of Torts. LSA-C.C. art. 2315.

In the instant case, extreme and outrageous conduct was exhibited by BRPD officers which caused the intentional infliction of emotional distress upon the Plaintiff when Mr. Williams was subjected to two unconstitutional Strip searches[19] and one Body Cavity[20] search, whereby he was made to open his butt cheeks and bend over in the presence of officers. After the unconstitutional searches he was arrested for possession of a firearm that was not stolen and the charge was later dropped.

    d. **False imprisonment–** is the intentional confinement or detention of another, without his consent and without proper legal authority.

In the instant matter, Mr. Williams was held in the "BRAVE Cave" where he was subject to unconstitutional Strip[21] and Body Cavity[22] searches without probable cause and over his verbal objections. After the unconstitutional searches he was arrested for possession of a firearm that was not stolen and the charge was later dropped.

    e. **Negligence**– In order to prevail in a negligence action, a plaintiff must prove the following five elements:
(1) the defendant had a duty to conform his conduct to a specific standard of care;
(2) the defendant's conduct failed to conform to the appropriate standard of care [breach of duty];
(3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries;
(4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries; and
(5) the plaintiff was damaged.[23]

In the instant matter, the Defendant Officers had a duty to conform their conduct to a specific standard of care, i.e., in compliance with the Baton Rouge Police Department Policy and Procedures Manual and the Plaintiff's constitutional rights. Further, as illustrated herein, the defendant's conduct failed to conform with several BRPD policies. Moreover, the substandard

---

[19] Strip Search: A visual inspection of an individual who has disrobed including the hair, mouth, ears, nostrils, groin area and buttocks to locate weapons, contraband or evidence. *See* BRPD Policy Manual General Order 281.
[20] Body Cavity Search: A search involving not only the visual inspection of skin surfaces but the internal physical examination of body cavities and, in some instances the stomach cavity, for weapons, evidence or contraband. *See* BRPD Policy Manual General Order 281.
[21] Strip Search: A visual inspection of an individual who has disrobed including the hair, mouth, ears, nostrils, groin area and buttocks to locate weapons, contraband or evidence. *See* BRPD Policy Manual General Order 281.
[22] Body Cavity Search: A search involving not only the visual inspection of skin surfaces but the internal physical examination of body cavities and, in some instances the stomach cavity, for weapons, evidence or contraband. *See* BRPD Policy Manual General Order 281.
[23] *Fruge v. ONOB, Inc.*, Court of Appeal of Louisiana, Third Circuit, 32 So.3d 1115.

conduct of the Defendant officers directly led to and was the cause of the Plaintiff's various injuries. Therefore, the officer's breach of duty (misconduct) was the legal cause of the Plaintiff's injuries and the cause of his damages.

22.

Further, no reasonably prudent officer would not initiate an illegal arrest. Nor would a reasonably prudent officer initiate unwarranted strip and body cavity search. Nor would a reasonably prudent officer initiate or carry out violations of citizens constitutional rights. Nor would a reasonably prudent officer initiate or carry out violations department policy. Moveover, Officers Lawrence, Carboni, Thomas, and Nevels all had knowledge that severe emotional distress was substantially certain to result from their conduct.

23.

As a result of the abovementioned torts, Mr. Williams has suffered damages including: (1) deprivation of his right to be free from unreasonable searches, seizures and arrest ; (2) mental and emotional injury; (3) pain and suffering; and (4) any other special and general damages and expenses, in an amount to be proven at trial.

**Count VI**
**State Law Claims**
**(PLAINTIFF AGAINST INDIVIDUAL OFFICER DEFENDANTS)**

24.

The Defendants, Officers Lawerence, Carboni, Thomas, and Nevels are responsible and liable to Plaintiff for the damages and injuries Mr. Williams has suffered as a result of Defendants' actions and/or inactions pursuant to:

A. Louisiana Code of Civil Procedure Article 2315, which provides that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it;"

B. Louisiana Code of Civil Procedure Article 2316, which provides that "[e]very person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill;"

police officers as alleged herein are violations of Louisiana tort and criminal laws of:

    A.  Battery;
    B.  Assault; and
    C.  Intentional Infliction of Emotional Distress
    D.  False Imprisonment
    E.  Negligence

**25.**

    a.  **Battery** - "[a] harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff to suffer such a contact[.][24]

In the instant case, officers with the Baton Rouge Police Department, in their capacity as officers employed by BRPD, initiated contact with Mr. Williams for possible traffic violations. He was strip searched on scene and had his genitals squeezed so hard that he later required medical treatment for a UTI. He was subsequently taken to the BRAVE Cave and was subject to unconstitutional Strip[25] and Body Cavity[26] searches. After the unconstitutional searches he was booked into parish prison and charges were later dropped when the owner (Jessica) provided Williams with paperwork showing that the gun was not stolen and had been returned to her. Said paperwork coming from BRPD themselves.

    b.  **Assault** - 'a threat of such a harmful or offensive contact."[27]

In the instant matter, an assault occurred when Mr. Williams was detained by BRPD officers on the scene of the traffic stop and his genitals were grabbed by officer Lawrence causing extreme discomfort and later required treatment. A second assault occurred when Williams was subjected to an offensive, unwarranted, and invasive search of his person in an open facility by a BRPD officer. All the above listed instances were assaults as they placed Mr. Williams in

---

[24] *Cage v. Wood*, 484 So.2d 850 (La.App. 1st Cir.1986); *Ross v. Sheriff of Lafourche Parish*, 479 So.2d 506 (La.App. 1st Cir.1985); *Vascocu v. Singletary*, 404 So.2d 301 (La.App. 3d Cir.1981); *Ashland Oil, Inc. v. Miller Oil Purchasing Co.*, 678 F.2d 1293 (5th Cir.1982); Restatement (Second) of Torts, American Law Institute § 13 (1965); F. Stone, Louisiana Civil Law Treatise, Tort Doctrine § 124—130 (1977); W. Prosser and W. Keeton, The Law of Torts, § 9 (5th ed. 1984); F. Harper and F. James, The Law of Torts, § 3.1—3.3 (2nd ed. 1986).

[25] Strip Search: A visual inspection of an individual who has disrobed including the hair, mouth, ears, nostrils, groin area and buttocks to locate weapons, contraband or evidence. *See* BRPD Policy Manual General Order 281.

[26] Body Cavity Search: A search involving not only the visual inspection of skin surfaces but the internal physical examination of body cavities and, in some instances the stomach cavity, for weapons, evidence or contraband.*See* BRPD Policy Manual General Order 281.

[27] *See* 512 So. 2d 389 (La. 1987).

c. **Intentional infliction of emotional distress- "**the Louisiana Supreme Court has outlined the three elements a plaintiff must establish in order to bring a claim for intentional infliction of emotional distress: 1) extreme and outrageous conduct by the defendant; 2) severe emotional distress suffered by the plaintiff; and 3) the intent by the defendant to inflict severe emotional distress or the knowledge that severe emotional distress was certain or substantially certain to result from the defendant's conduct."[28]

In the instant case, extreme and outrageous conduct was exhibited by BRPD officers which caused the intentional infliction of emotional distress upon the Plaintiff when Mr. Williams was subjected to two unconstitutional Strip searches[29] and one Body Cavity[30] search, whereby he was made to open his butt cheeks and bend over in the presence of officers. After the unconstitutional searches he was arrested for possession of a firearm that was not stolen and the charge was later dropped.

d. **False imprisonment–** is the intentional confinement or detention of another, without his consent and without proper legal authority.

In the instant matter, Mr. Williams was held in the "BRAVE Cave" where he was subject to unconstitutional Strip[31] and Body Cavity[32] searches without probable cause and over his verbal objections.  After the unconstitutional searches he was arrested for possession of a firearm that was not stolen and the charge was later dropped.

e. **Negligence**– In order to prevail in a negligence action, a plaintiff must prove the following five elements:
(1) the defendant had a duty to conform his conduct to a specific standard of care;
(2) the defendant's conduct failed to conform to the appropriate standard of care [breach of duty];
(3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries;
(4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries; and

---

[28] *White v. Monsanto Co.*, 585 So.2d 1205, (La. 1991); *Karl J. Pizzalotto, M.D., Ltd. v. Wilson*, 437 So.2d 859 (La.1983); *Coppage v. Gamble*, 324 So.2d 21 (La.App. 2d Cir.1975); F. Stone, Louisiana Civil Law Treatise, Tort Doctrine, § 125—127 (1977); F. Harper and F. James, The Law of Torts, § 3.3 (2nd ed. 1986). Cause of action for intentional infliction of emotional distress is viable in Louisiana, generally in accord with legal precepts set forth in Restatement (Second) of Torts. LSA-C.C. art. 2315.

[29] Strip Search: A visual inspection of an individual who has disrobed including the hair, mouth, ears, nostrils, groin area and buttocks to locate weapons, contraband or evidence. *See* BRPD Policy Manual General Order 281.

[30] Body Cavity Search: A search involving not only the visual inspection of skin surfaces but the internal physical examination of body cavities and, in some instances the stomach cavity, for weapons, evidence or contraband.*See* BRPD Policy Manual General Order 281.

[31] Strip Search: A visual inspection of an individual who has disrobed including the hair, mouth, ears, nostrils, groin area and buttocks to locate weapons, contraband or evidence. *See* BRPD Policy Manual General Order 281.

[32] Body Cavity Search: A search involving not only the visual inspection of skin surfaces but the internal physical examination of body cavities and, in some instances the stomach cavity, for weapons, evidence or contraband.*See* BRPD Policy Manual General Order 281.

In the instant matter, the Defendant Officers had a duty to conform their conduct to a specific standard of care, i.e., in compliance with the Baton Rouge Police Department Policy and Procedures Manual and the Plaintiff's constitutional rights. Further, as illustrated herein, the defendant's conduct failed to conform with several BRPD policies. Moreover, the substandard conduct of the Defendant Officers directly led to and was the cause-in-fact of the Plaintiff's various injuries. Therefore, the officer's breach of duty (misconduct) was the legal cause of the Plaintiff's injuries and the cause of his damages.

**26.**

Further, no reasonably prudent officer would not initiate an illegal arrest. Nor would a reasonably prudent officer initiate unwarranted strip and body cavity search. Nor would a reasonably prudent officer initiate or carry out violations of citizens constitutional rights. Nor would a reasonably prudent officer initiate or carry out violations department policy. Moveover, Officers Lawrence, Carboni, Thomas, and Nevels and all had knowledge that severe emotional distress was substantially certain to result from their conduct.

**27.**

As a result of the abovementioned torts, Mr. Williams has suffered damages including: (1) deprivation of his right to be free from unreasonable searches, seizures and arrest ; (2) mental and emotional injury; (3) pain and suffering; and (4) any other special and general damages and expenses, in an amount to be proven at trial.

**Count VII**
**State Constitutional Violations**
**(PLAINTIFF AGAINST INDIVIDUAL OFFICER DEFENDANTS)**

**28.**
The actions and/or inactions of Officers Lawrence Jr., Carboni, Thomas Jr., and Nevels

---

[33] *Fruge v. ONOB, Inc.*, Court of Appeal of Louisiana, Third Circuit, 32 So.3d 1115.

> Louisiana Constitutional Article I §5 states: "every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy. No warrant shall issue without probable cause supported by oath or affirmation, and particularly describing the place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search. Any person adversely affected by a search or seizure conducted in violation of this Section shall have standing to raise its illegality in the appropriate court."

In the instant matter, BRPD Officers violated the Plaintiff's rights Section 5 to be free from unreasonable searches, seizures and illegal arrest when Baton Rouge Police Department officers, in their capacity as officers employed by BRPD, when Mr. Williams was illegally strip searched on the street then was fasely arrested and transported to the BRAVE Cave where he was subject to unconstitutional Strip[34] and Body Cavity[35] searches. After the unconstitutional search, seizure and arrest he was charged with a crime that was later dropped when paperwork provided by BRPD themselves showed that the gun he possessed was not stolen but had been returned to the rightful owner months prior.

**29.**

As a result of the actions and inactions of Officers Lawrence, Carboni, Thomas, and Nevels, as alleged herein, Mr. Williams has suffered damages including: (1) deprivation of his 4th Amendment right to be free from unlawful search, seizure, and arrest; (2) mental and emotional injury; (3) pain and suffering; and (4) any other special and general damages and expenses in an amount to be proven at trial.

**<u>JURY TRIAL DEMAND</u>**

**30.**

Plaintiff requests a trial by jury.

**<u>PRAYER FOR RELIEF</u>**

**31.**

---

[34] Strip Search: A visual inspection of an individual who has disrobed including the hair, mouth, ears, nostrils, groin area and buttocks to locate weapons, contraband or evidence. *See* BRPD Policy Manual General Order 281.

[35] Body Cavity Search: A search involving not only the visual inspection of skin surfaces but the internal physical examination of body cavities and, in some instances the stomach cavity, for weapons, evidence or contraband.*See* BRPD Policy Manual General Order 281.

The Plaintiff respectfully requests:

   **A.** Compensatory damages as to all Defendants;
   **B.** Special Damages as to all Defendants;
   **C.** Punitive damages as to all Defendants sued in their individual capacity;
   **D.** Reasonable attorneys' fees and costs as to all Defendants; and
   **E.** Such other and further relief as may appear just and appropriate.

**WHEREFORE**, Plaintiff, Randall Williams does pray that a copy of this Complaint is served upon all of the Defendants named herein, and that after all proceedings a judgment is rendered in favor of Plaintiff and against all Defendants jointly, severally, and/or *in solido* and that said judgment is in excess of three million dollars ($1,000,000) including interest, delay damages, costs of suit, attorneys fees, general and specific damages, punitive and exemplary damages and any other damages as provided by law.

Respectfully submitted,

_**Ronald S. Haley, Jr.**_
Ronald S. Haley, Jr. (#30900)
Ryan Beaulieu (#39799)
HALEY & ASSOCIATES
ATTORNEYS AT LAW, LLC
8211 Goodwood Blvd Suite E
Baton Rouge, LA 70806
225-663-8869 office
888-900-9771 facsimile
**COUNSEL FOR RANDALL WILLIAMS**